# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| JUAN MORALES, )<br>)<br>    Plaintiff, )<br>v. )<br>)    CIVIL NO. 2007/0005<br>SUN CONSTRUCTORS, INC., )<br>)<br>    Defendant. )<br>_____ ) | |

## MEMORANDUM OPINION

Finch, J.

    THIS MATTER comes before the Court on the Motion to Stay Proceedings pending Arbitration filed by Defendant Sun Constructors, Inc. [hereinafter "Sun"].  An evidentiary hearing was held on such motion on August 23, 2007.

    Plaintiff Juan Morales claims that although he signed the Hourly Employee Agreement, he never "agreed" to arbitrate in that he does not read English and did not realize that he was signing an agreement containing arbitration provisions.  As such, he is attacking the making of the agreement to arbitrate rather than the arbitration agreement itself.  In addition, he does not attack the making of the Hourly Employee Agreement as a whole, but only the incorporated agreement to arbitrate.  Thus, this is a matter for the Court to adjudicate.  See American Heritage Life Ins. Co., 321 F.3d 533, 540 (5th Cir. 2003) (relying on Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967)).

    Before commencing his employment with Sun, Sun required Morales to attend an employee orientation.  Sun provided such orientation to several other employees along with Morales.  One of those employees, Jose Hodge, was a native Spanish speaker, like Morales, but also had a strong grasp of English.  At Sun's request, Hodge translated portions of the orientation

and parts of the Hourly Employee Agreement for Morales.  However, Hodge failed to translate the arbitration provisions and never told Morales that by signing the agreement he would be waiving his right to a jury trial.

The Court observed at the hearing in this matter that Morales understands very little English and that he cannot read English.  The Court finds that Morales signed the Hourly Employee Agreement without realizing that the Hourly Employee Agreement contained an arbitration clause.  If Morales had been alerted that the Hourly Employee Agreement contained any provisions requiring closer circumspection, Morales may have been obliged to seek further translation or clarification.  From the evidence presented, however, the Court cannot find that Morales would have known that there was anything particular in the Hourly Employee Agreement that would have warranted further review.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986) (quotation omitted).  When deciding whether the parties agreed to arbitrate the dispute in question, the Court applies territorial law principles.  See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  In the Virgin Islands, "the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration."  Restatement (Second) of Contracts § 17; see also  Louisville & N.R. Co. v. Kentucky, 161 U.S. 677, 692 (1896) (holding that "[i]t is a fundamental principle in the law of contracts that, to make a valid agreement, there must be a meeting of the minds").

The recent case of Garza Nunez v. Weeks Marine, Inc., 2007 WL 2008105, *1 (E.D. La.,

Jul. 5, 2007) bears certain factual similarities to the case at bar.  As in this case, while one employee, a field engineer/surveyor, explained the terms of the agreement in English, a bilingual employee translated for a Spanish speaker.  Id. at *1.  The field engineer/surveyor heard several verbal exchanges between the translator and plaintiff, but did not know exactly what the translator told plaintiff about the arbitration agreement.  Id. at *3.

>The court criticized the procedure that was utilized:
>
>Though [the translator] could read the Agreement, he had no previous experience with such matters. Moreover, there is a lack of evidence that the Agreement's substantive terms and conditions were sufficiently explained to the Plaintiff. . . . . Though [the field engineer/surveyor] testified at trial that he stated that the Plaintiff would be foreclosed from suing the Defendant in a court of law if the Plaintiff signed the document, it is unclear whether [the field engineer/surveyor's] statements were repeated accurately to the Plaintiff.  Although [the translator] read through the entire Agreement with the Plaintiff, it is unclear exactly what [the translator] told the Plaintiff when he followed the reading with explanations and/or an interpretation of what the language meant.  Given the fact that the Plaintiff was relinquishing valuable legal rights by signing the Agreement, he should have been presented by a representative of the Defendant who was knowledgeable about the Arbitration Agreement's terms and conditions. Instead, he was presented by fellow employees with no prior knowledge or skill handling such matters.

Id. at *7.  The court concluded because of these and other exacerbating circumstances, that "there was no 'meeting of the minds' and thus the Plaintiff did not knowingly consent to arbitration."  Id.

As in Garza Nunez, it is unclear exactly what Hodge told Morales.  However, the record does indicate that Hodge never explained to Morales that the Hourly Employee Agreement contained an arbitration provision.  Thus, the Court finds that there was no mutual assent and that, therefore, Morales did not knowingly consent to arbitration.  Accordingly, the Court will not compel Morales to arbitrate his claims against Sun.

3

ENTER:

DATE: September 19, 2007 _____/s/_____
Honorable Raymond L. Finch
District Court Judge